**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **TONY ROSS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-1146** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tony Ross seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 15).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1958, has a high-school education, and previously worked as a letter carrier, cleaner/maintenance worker, sales associate, and delivery worker.  R. at 26, 215.  Plaintiff protectively filed applications for DIB and Supplemental Security Income ("SSI") on November 3, 2011, alleging disability beginning on December 31, 2010, due to back problems and allergies.  R. at 14, 178-87, 214.  The Commissioner initially denied Plaintiff's application for SSI on November 21, 2011, because of excess income for eligibility for SSI.  Hartt Decl. ¶ (b) & Ex. 3, ECF No. 15-2.  Plaintiff did not appeal the Commissioner's denial of his application for SSI.  Hartt Decl. ¶ (c), ECF No. 15-2.

The Commissioner denied Plaintiff's application for DIB initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 81-114.  On July 7, 2014, ALJ Michael A. Krasnow held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 43-80.  At the hearing, Plaintiff amended his alleged onset date of disability to January 30, 2012.  R. at 45, 210.  On August 26, 2014, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of January 30, 2012, through the date last insured of June 30, 2012.  R. at 11-32.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 23, 2015.  R. at 1-5, 10.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 22, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States

Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    State Agency Medical Consultants

On February 14, 2012, a state agency consultant, D. Peterson, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.09 relating to affective disorders and substance addiction disorders (R. at 85-86).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.09.  Dr. Peterson opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  R. at 86.  Dr. Peterson did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings.  R. at 86.  Dr. Peterson opined that Plaintiff's impairments were not severe. R. at 86.

On February 22, 2012, another state agency consultant, W. Hakkarinen, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 87-88.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 87-88.

Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl.  R. at 88.  Plaintiff

had no manipulative, visual, communicative, or environmental limitations.  R. at 88.

On August 1, 2012, another state agency consultant, E. Nakhuda, M.D., again assessed

Plaintiff's physical RFC.  R. at 99-100.  Dr. Nakhuda opined that Plaintiff could (1) lift and/or

carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of

about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday;

and (4) perform unlimited pushing and/or pulling.  R. at 99.  Plaintiff occasionally could climb,

balance, stoop, kneel, crouch, and crawl.  R. at 100.  Plaintiff had no manipulative, visual,

communicative, or environmental limitations.  R. at 100.

On August 28, 2012, another state agency consultant, G. Dale, Jr., Ed.D., again used the

PRT to evaluate Plaintiff's mental impairments under Listings 12.02, 12.04, 12.06, and 12.09

relating to organic mental disorders, affective disorders, anxiety-related disorders, and substance

addiction disorders (R. at 97-98).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.02, 12.04, 12.06,

12.09.  Dr. Dale opined that, under paragraph B of the applicable listings, Plaintiff's mental

impairments caused him to experience (1) mild restriction in activities of daily living;

(2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in

maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of

extended duration.  R. at 98.  Dr. Dale did not find evidence to establish the presence of the

criteria under paragraph C of the applicable listings.  R. at 98.  Dr. Dale thus assessed Plaintiff's

mental RFC (R. at 101-03) and opined that he was moderately limited in his ability to

(1) understand, remember, and carry out detailed instructions; (2) maintain attention and

concentration for extended periods; (3) perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances; (4) complete a normal workday and

4

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (7) respond appropriately to changes in the work setting. R. at 101-02.  Plaintiff otherwise was not significantly limited. R. at 101-02.

**B.     Hearing Testimony**

**1.     Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] testified that he had to stop his long-term job as a letter carrier because he kept getting sick.  However, he continued to work for the postal service thereafter in a different position.  [Plaintiff] explained that he had allergic reactions wherein his throat closed, and he had swelling and bowel incontinence. He sometimes passed out due to shock from the reactions.  [Plaintiff] said his doctors did not know what caused the allergic reactions, but that he had them two or three times per month.  [Plaintiff] also testified regarding his back pain.  He reported that he underwent back surgery many years before, in the early to mid-1990's.  He said that he also took pain medication for his back, which only helped some.  He reported no side effects from his medication.  [Plaintiff] also had PTSD related to trauma as a child and his roommate being killed while he was in military service.  He admitted that he was advised to attend PTSD group therapy, but had not even taken psychiatric medications since 2012.  With regard to his functional ability, [Plaintiff] stated that he could hardly lift any weight because of prior surgery on his hand, had numbness radiating down his leg from his back, and could only walk about one block.  He also testified that he decreased his smoking earlier this year but had not quit smoking completely.

R. at 20-21; *see* R. at 48-53, 54-71.

**2.     VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could not perform Plaintiff's past

relevant work but could perform the unskilled, light[2] jobs of machine tender, table worker, or grading and sorting worker.  R. at 72-74.  The VE's testimony was consistent with the *Dictionary of Occupational Titles*.[3]  R. at 74.  A person with a reduction in productivity of 20% would not be employable.  R. at 76.  A person absent from work two days per month would not be employable.  R. at 76.

## III

## Summary of ALJ's Decision

On August 26, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity from the amended alleged onset date of disability of January 30, 2012, to the date last insured of June 30, 2012; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a machine tender, table worker, or grading and sorting worker.  R. at 16-27.  The ALJ thus found that he was not disabled from January 30, 2012, through the date last insured of June 30, 2012.  R. at 27.

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  *Id.* § 404.1567(b).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

In so finding, the ALJ found that, through the date last insured, Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b), except he could occasionally climb ramps and stairs, climb ropes, ladders or scaffolds, balance, stoop, kneel, crouch and crawl; should avoid concentrated exposure to fumes, odors, dust, gases and hazards, including machinery and unprotected heights and parts; is limited to simple, routine, repetitive tasks; occasional changes in the work setting; no production rate for pace of work; and occasional interaction with the general public and co-workers.

R. at 20.

The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 21. In this regard, the ALJ found that Plaintiff's allergy attacks "did not appear to be as severe as he alleged" because they were treated conservatively, his symptoms were partially controlled, he rarely sought emergency room treatment for allergic reactions, and he was not compliant with recommendations to stop smoking. R. at 21-22. The ALJ further stated:

> In additional to the medical evidence, the undersigned notes that [Plaintiff] received unemployment compensation in 2011 and 2012 during some of the same time-period in which he alleges that he was disabled. To receive these benefits, an individual typically must aver that he is ready, willing, and able to work. The receipt of unemployment benefits also demonstrates a certain level of functioning, because recipients generally must search for jobs and make regular reports to the unemployment agency of their job search activity. [Plaintiff] confirmed at the hearing that he applied for jobs during this time-period and would have tried to work had he been offered a job. Although the receipt of unemployment benefits does not preclude the receipt of Social Security benefits, it is a factor to be considered in determining whether [Plaintiff] is disabled. The undersigned finds that the foregoing diminishes the credibility of [Plaintiff's] allegations of disability during the time-period at issue.

R. at 24 (citations omitted).

The ALJ also found that, with regard to concentration, persistence, or pace,

> [Plaintiff] has moderate difficulties.    [Plaintiff] similarly demonstrated inconsistent difficulties in this domain.  He testified that he continued to apply for jobs after the alleged onset date, mostly on the computer or by telephone.  This activity and ability shows [sic] persistence.    During his first consultative examination, [Plaintiff] was oriented, able to recall three out of three items after a delay, but had difficulty with serial seven counting.  He was also able to follow a three-step command and demonstrated average fund of knowledge and intelligence [R. at 447-51].  He reported that he enjoyed watching sports on T.V. and confirmed that he could understand and follow simple instructions [R. at 449-50].  However, at a more recent consultative examination, [Plaintiff] showed some decline in concentration.  He missed points on the MMSE, had difficulty with delayed recall and could not figure out the difference between a city and a state [R. at 504].  Despite this one-time poor performance, no treating provider observed any cognitive difficulties or deficiencies in this domain.  Thus, the undersigned finds no more than moderate difficulties in this area.  Accordingly, the undersigned limited [Plaintiff] to simple, routine, repetitive tasks and no production rate work.

R. at 19.

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience.     20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.     20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.   *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).   In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."   *Id.*   The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."   42 U.S.C. § 405(g).   Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.   *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.   *Hancock*, 667 F.3d at 472.   Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."   *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

## Discussion

### A.    Plaintiff's SSI Claim

Plaintiff first maintains that substantial evidence does not support the ALJ's decision because the ALJ did not consider the proper period at issue. Pl.'s Mem. Supp. Mot. Summ. J. 4-5, ECF No. 12-1. He contends that the period at issue for his SSI claim was from January 30, 2012, to August 26, 2014, the date of the ALJ's decision. *Id.* As Defendant points out, however, the Commissioner denied Plaintiff's application for SSI on November 21, 2011, because of excess income, and Plaintiff did not appeal this denial. Hartt Decl. ¶¶ (b)-(c) & Ex. 3, ECF No. 15-2. "To qualify for DIB, [the claimant] must prove that she became disabled prior to the expiration of her insured status." *Johnson*, 434 F.3d at 655-56. Thus, the proper period at issue in this case relating to Plaintiff's claim for DIB is from the amended alleged onset date of disability of January 30, 2012, to the date last insured of June 30, 2012. Plaintiff's argument to the contrary is without merit.

### B.    ALJ's RFC Assessment

Plaintiff then contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot.

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to

Summ. J. 5-10, ECF No. 12-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work.  *Id.* at 7-8.  In particular, he contends that, although the ALJ found that he had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment, instead limiting him to simple, routine, and repetitive tasks.  *Id.* at 8.  Plaintiff further asserts that the ALJ erred in evaluating his mastocystosis and relying on his receipt of unemployment insurance benefits during the alleged period of disability.  *Id.* at 8-9.  According to Plaintiff, substantial evidence thus does not support the ALJ's RFC assessment.  *Id.* at 10.  For the reasons discussed below, Plaintiff's assertions are unavailing.

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

"assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

(per curiam)).   Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."   *Id.* (quoting *Cichocki*, 729 F.3d at 177).   The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address.   *Id.* at 637; *see Monroe v. Colvin*, __ F.3d __, No. 15-1098, 2016 WL 3349355, at *9-10 (4th Cir. June 16, 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

### 1.     *Mascio v. Colvin*

Plaintiff contends that, in assessing his RFC, the ALJ failed to consider adequately his moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*. Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 12-1.   In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"   *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task.   Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."   *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.   *Id.*   In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step

three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three

areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)). With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.* Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social

functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00(C)(2). Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Finally, "[*e*]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to "no production rate for pace of work" (R. at 20, 73) accounts

for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (holding that hypothetical question that referenced individual who "would not have a quota to fulfill" accounted for moderate difficulties in concentration, persistence, or pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that ALJ captured claimant's moderate limitation in concentration, persistence, and pace when ALJ included restriction of "no high production goals"); *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (using low production standards for moderate limitation in concentration, persistence, and pace); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."); *see also Chase v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2961, 2016 WL 199410, at *3 (D. Md. Jan. 15, 2016) (determining that ALJ's assessment of claimant's RFC to "no production rate or paced work" accounted for claimant's moderate limitation in concentration, persistence, or pace); *Shirey v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-261, 2015 WL 7012718, at *4 (D. Md. Nov. 10, 2015); *Rayman v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) ("[T]he limitation to an environment with few changes and no production quotas assures that [the claimant] is not required to produce any particular volume of work-product and is not distracted or required to adapt to changes in the workplace.  Thus, the ALJ accounted for any time that [the claimant] would be off-task due to his limited ability to maintain focus."); *Gair v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3652, 2015 WL 5774982, at *2 (D. Md. Sept. 28, 2015) (finding that ALJ adequately accounted for claimant's moderate limitation in concentration, persistence, or

pace by limiting him to work with no strict production quotas).  Plaintiff's argument that remand is warranted in this case under *Mascio* thus is without merit.

### 2.  Plaintiff's Allergy Attacks

Plaintiff further maintains that the ALJ erroneously evaluated his mastocytosis[6] and that the evidence supported his "testimony that his condition had improved to the point where he was only experiencing attacks two to three times per month," undermining the ALJ's determination that his testimony was exaggerated.  Pl.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 12-1.  The ALJ found that the medical evidence of record confirmed Plaintiff's testimony that he experienced allergic reactions from an unknown cause, which a treating provider characterized as mastocytosis.  R. at 21 (citing R. at 499).  The ALJ also found that "the frequency of [Plaintiff's] allergy attacks as documented or reported in the medical records was not nearly as frequent as he described at the hearing."  R at 21 (citing R. at 279, 313).  The ALJ noted that, "[e]ven right before the amended alleged onset date, [Plaintiff] reported that he had not had any allergy attacks in the past month" and that he did not report having two to three attacks per month to his medical providers during routine follow-up appointments.  R. at 21 (citing R. at 366, 474).  Substantial evidence supports the ALJ's determination regarding the credibility of Plaintiff's testimony about the frequency of his allergy attacks.  Thus, Plaintiff's argument that evidence in January 2012 supported his testimony that his condition had improved to the point where he was only experiencing allergy attacks two to three times per month is without merit.

### 3.  Plaintiff's Receipt of Unemployment Insurance Benefits

Finally, substantial evidence supports the ALJ's finding that Plaintiff's receipt of unemployment compensation during the period at issue diminished his credibility (R. at 24).  *See*

---

[6] Mastocystosis is the "[a]bnormal proliferation of mast cells in a variety of tissues." *Mastocystosis*, *Stedman's Medical Dictionary* (28th ed. 2006).

*Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) ("[W]e are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability."); *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (stating that "the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability," but noting that ALJ cannot base adverse credibility finding on this fact alone); *Ingrodi v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-13-3283, 2015 WL 222174, at *2 (D. Md. Jan. 12, 2015). Plaintiff's contention to the contrary thus is unavailing. Pl.'s Mem. Supp. Mot. Summ. J. 9-10, ECF No. 12-1.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: August 16, 2016          _____/s/_____

                                  Thomas M. DiGirolamo
                                  United States Magistrate Judge